RECEIVED

OCT - 5 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| DONNEL JACK | * | CIVIL ACTION NO. 04-2102 |
| VERSUS | * | JUDGE MELANÇON |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Donnel Jack, born July 29, 1960, filed an application for disability insurance benefits on December 15, 2000, alleging disability as of February 19, 1999, due to a herniated disc, neck and back problems, and temporomandibular joint (TMJ) syndrome.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Report from James A. Pearce, DDS dated December 9, 1999.** Claimant complained of bilateral mandibular pain, ringing in his ears, auricular and cervical pain with headaches after an accident on February 19, 1999. (Tr. 90). After examination and testing, Dr. Pearce's impression was right TMJ capsulitis causing arthralgia, degenerative arthritis of the left TM joint, parafunctional activity such as bruxism resulting in increased muscle hyperactivity, chronic, generalized gingivitis, and replacement of posterior restorations which were either cracked or broken down. (Tr. 92). He recommended diagnostic split therapy for six to nine months, physical therapy, and medication if needed to control muscle pain.

**(2) Records from Dr. A. John Tassin, Jr. dated July 29, 1997 to March 29, 2000.** On February 23, 1999, claimant reported that he had been running a jack hammer at work when it hit a power line, causing him to lose control of his body. (Tr. 108-09). He complained of headaches, hearing problems, dizziness, neck pain, shoulder pain, chest pain, shortness of breath, left thumb numbness, low back pain with burning and stinging sensations, nervousness, insomnia, and nightmares. On examination, he had neck and lumbar tenderness with decreased range of motion. (Tr. 107). Dr. Tassin's diagnosis was post-traumatic headaches; cervical, trapezius,

2

shoulder and lumbar injuries; anxiety; insomnia, and accelerated hypertension. (Tr. 108). He prescribed out-patient care and medications, including Motrin, Ultram, Sinequan, Vistaril, and Toradol.

After claimant continued to complain of neck and lumbar pain, Dr. Tassin referred him to Dr. Blanda. (Tr. 102).

**(3) Records from Dr. Louis C. Blanda, Jr. dated March 30, 1999 to February 1, 2001**. On March 30, 1999, claimant complained of neck and low back pain following a work-related injury. (Tr. 121). On neck examination, he had some tenderness of the trapezius. (Tr. 122). Neck range of motion was about 60% of normal. He had crepitus in the TMJs. He had decreased sensation to pink prick in the left thumb. DTRs were 3+ in the biceps, triceps, and brachial radialis. Motor showed good grip, biceps and triceps strength. He had no atrophy in the upper extremities.

On low back examination, claimant had tenderness throughout the lower thoracic but primarily the lumbar spine. Straight leg raising at 90 degrees caused back pain without leg symptoms. He flexed to 80 degrees and extended to 20 degrees with pain complaints in the extremes. Motor showed good strength. Claimant could heel and toe walk, and his gait was unremarkable. DTRs were 3+ in the knee and ankle jerks with no atrophy in the lower extremities.

X-rays showed diffuse degenerative changes but no evidence of fracture. Dr. Blanda prescribed physical therapy and Ambien for sleep.

A cervical MRI dated May 27, 1999 showed a small left lateral disc protrusion at 3-4; central focal and left lateral disc herniation with compression to the cord and bilateral foraminal stenosis, more prominently on the left, at 4-5; bilateral lateral spondylosis, more prominent on the left, and bilateral foraminal stenosis, more prominent on the left, at 5-6, and minor left lateral spondylosis, left foraminal stenosis with possible left C7 nerve root compromise at 6-7. (Tr. 119).

Claimant continued to have lots of neck and bilateral arm pain, as well as low back and left leg pain, on December 7, 1999. (Tr. 117). A cervical spine myelogram dated April 4, 2000 showed small central spondylosis at 3-4; prominent spinal stenosis secondary to a central disc herniation and spondylosis with chronic deformity to the cord, and blunting and premature termination to the right C5 nerve root at 4-5; small central spondylosis with cord displacement and blunting and premature termination of both C6 nerve roots at 5-6, and small central spondylosis with blunting and premature termination to the left C7 nerve root at 6-7. (Tr. 113). A post-myelogram CT showed small central and left lateral spondylosis at 3-4; moderate spinal stenosis secondary to a central disc bulge and calcified spondylosis, and bilateral foraminal stenosis with possible compromise of the C5 nerve roots at 4-5,

and small central spondylosis with moderate left foraminal stenosis at 5-6 and 6-7. (Tr. 114). A lumbar MRI showed a minor central broad-based disc bulge at 2-3, a small left lateral focal disc herniation with minor displacement of the left L4 nerve root at 3-4, and a minor central broad-based disc bulge at 4-5.

On June 13, 2000, claimant was doing about the same. (Tr. 112). He had neck and back pain without focal neurological deficit. He agreed with non-operative treatment for that time.

Claimant failed to show for his appointment on October 26. (Tr. 111).

On February 1, 2001, claimant reported that he did not want surgery. (Tr. 110). Dr. Blanda opined that he could not do any manual work. He recommended that claimant follow up with Dr. Hodges for pain management.

**(4) Orthopedic Consultative Examination by Dr. Leandre Odom dated March 31, 2001.** Claimant complained of constant back pain for two years with no radiation, a history of TMJ with intermittent crackling in the jaw and ringing in the ears, and throbbing headaches three to four times a week lasting two to four hours. (Tr. 128). Medication did help his back pain, but he was not taking any for headaches. He could dress, but needed assistance. He could feed himself without difficulty.

Claimant reported that he could stand at one time for only about 1 minute, and 20 to 30 minutes in an 8-hour period. He could walk about 1 block, and sit about 30 minutes. On some days, he could lift 10 pounds. He could drive only 5 to 10 minutes at a time. He grocery shopped, which was the only household chore he did. His medications included Celebrex, amitriptyline, Darvocet, and Zoloft.

On examination, claimant was 73 inches tall and weighed 211 pounds. His blood pressure was 131/81. He ambulated slowly and with slight difficulty, and got on and off of the table and up and out of the chair very slowly. He could dress and undress himself.

On spine examination, claimant's pulses were +2 in the upper and lower extremities bilaterally. (Tr. 129). He had no cyanosis, clubbing or edema. Gait was normal without assistive devices. Grip was 5/5 bilaterally. Fine and gross motor manipulations were present and normal.

Claimant had full range of motion of all extremities, except for the lumbar spine in which he had decreased flexion at 30 degrees. Hip flexion was decreased at 90 degrees bilaterally, internal and external rotation on the right were decreased at 0 degrees, and left was normal. Knees had decreased flexion at 90 degrees bilaterally.

The straight leg raises were normal. Claimant was able to walk on his heels, squat, tandem walk, and walk on his toes without difficulty. The range of motion of

all other extremities was normal.

Neurologically, claimant was normal, with no focal, motor, sensory, cerebellar or cranial nerve deficits. His deep tendon reflexes were normal.

X-rays of the lumbar spine showed small arthritic changes.

Dr. Odom's impression was low back pain with restriction mainly in the lumbar spine on flexion as well as hip flexion with no internal or external rotation on the right; cervical pain, with no limitation noted during examination and a full range of motion, and a slow gait without assistive devices. (Tr. 129). He noted that claimant had a well-defined musculature and build with no atrophy, and had calluses on his hands as well.

**(5) Physical Residual Functional Capacity Evaluation dated June 14, 2001.**
Dr. Leonard Cheramie found that claimant could occasionally lift/carry 50 pounds and frequently carry 25 pounds. (Tr. 131). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He had no other limitations. (Tr. 132-34).

Dr. Cheramie noted that claimant's allegations were only partially credible. (Tr. 135). He found it interesting that claimant had calluses on his hands, which "certainly" would not have been there had he been unable to do any work for 2 ½ years. He noted that claimant did not have any muscle atrophy. Additionally, he

observed that claimant "would be bedridden if he could only stand for one minute at a time."

**(6) Report from Dr. Tassin dated February 21, 2002**. Dr. Tassin noted that claimant continued to have pain in his TMJ, and that his left jaw and ear hurt constantly. (Tr. 143). He also suffered from high blood pressure, for which he was taking Avapro daily. Dr. Tassin concluded that claimant was "disabled and unable to work."

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on February 21, 2002, claimant was 41 years old. (Tr. 147). He testified that he was 6 feet 2 inches tall and weighed 215 pounds. He stated that he had lost 60 to 70 pounds over the last year due to his injury. (Tr. 148).

Claimant had attended school until the eighth grade. (Tr. 149). He stated that he could not read and write much. He was able to do math, but was not very good at it. (Tr. 150).

Claimant had past work experience in construction and operating a scraper. (Tr. 150). He had a worker's compensation claim which had settled for $215,000. (Tr. 148-49).

As to complaints, claimant testified that he had pain in his neck, back and legs. (Tr. 151). He complained that he had problems with sleeping at night due to pain.

He also said that he had problems with his nerves, for which he took medication once in a while. (Tr. 155). Additionally, he complained of daily headaches and TMJ. (Tr. 156).

Claimant reported that he was being treated by Dr. Hodges for pain, but had not seen him since the fall of 2000. (Tr. 151-52). He testified that Dr. Blanda had asked him if he wanted to have surgery, but he declined. (Tr. 151). He stated that he was taking medication daily, but did not remember what it was. (Tr. 152, 155).

Regarding activities, claimant testified that he could not do much around the house, and did not do any yard work. (Tr. 152). He reported that he drove once a week to the store. (Tr. 153). He stated that he spent his day watching television. (Tr. 154).

As to limitations, claimant stated that he carried only bread or milk at the most. (Tr. 153). He said that he could sit for about 10 to 15 minutes before having pain in his back and neck. (Tr. 153-54).

**(8) The ALJ's Findings are Entitled to Deference.** Claimant argues that the ALJ erred in failing to find him disabled.

First, claimant argues that the record contains "more than adequate medical records and opinions to verify that Mr. Jack suffers from herniated discs in the neck and back to the point that he is being treated with pain pills to this day." (rec. doc.

5, p. 3). While the ALJ found that claimant had the severe impairment of degenerative disc disease of the spine, he determined that it did not meet or equal the listing for musculoskeletal impairments. (Tr. 11).

The criteria for disorders of the spine is set forth in § 1.04 of the Social Security listings, which provides as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

While the records confirm that claimant had sustained a back injury, claimant has not shown that he met the criteria under § 1.04. None of the physicians, including

the treating physicians, Drs. Tassin and Dr. Cobb, found that he had motor loss (atrophy with associated muscle weakness or muscle weakness), or sensory or reflex loss. (Tr. 94-109, 110-27). In fact, Dr. Odom noted that claimant had a well-defined musculature and build with no atrophy, which is contrary to the listing criteria. (Tr. 129).

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* As claimant has not demonstrated that he met the criteria under § 1.04, the ALJ's finding that claimant's impairment did not meet the listing for spinal disorders is entitled to deference.

Next, claimant argues that "[t]here was absolutely no contrary evidence to [his] testimony," and that he was "absolutely credible and basically had nothing to hide when testifying herein." (rec. doc. 5, p. 3). However the ALJ found that claimant's testimony was contradicted by the medical records. In particular, he determined that claimant's frequency of treatment was inconsistent with his level of complaints. (Tr. 15). He observed that claimant had received little treatment other than visits to his general practitioner, Dr. Tassin, and infrequent visits to his orthopedist, Dr. Blanda.

Additionally, he noted that claimant had not seen Dr. Tassin since 2000 and Dr. Blanda since 2001. Gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms. *See, Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir. 1999); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993).

Additionally, the ALJ considered the type of medication claimant took. (Tr. 15). He noted that claimant had taken only a relatively small amount of prescription medication. He further observed that the type of medication that he was taking was not designed for the relief of severe pain. *See, Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong medication is inconsistent with subjective complaints of disability); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). These findings are confirmed by the medical evidence.

Further, the ALJ noted other inconsistencies which "stand out." (Tr. 16). He observed that claimant had told Dr. Odom that he needed assistance with dressing, but Dr. Odom stated that he was able to dress and undress at the time of examination. (Tr. 128). He also noted that claimant reported that he could stand for only one

minute at a time, but was able to walk one block. Additionally, the ALJ cited Dr. Cheramie's finding that claimant would be "bedridden" if he could only stand for one minute at a time. (Tr. 135).

Other factors include the fact that claimant stated that he could only sit for 30 minutes, but watched 6 to 8 hours of television a day. (Tr. 16, 79). Additionally, claimant claimed to have almost daily severe, throbbing headaches which lasted two to four hours, but did not take anything for them. Further, he noted that claimant claimed to be very inactive, yet Dr. Odom determined that he had no atrophy and was, in fact, muscular. (Tr. 129). Dr. Odom also found it noteworthy that claimant had calluses on his hands, which suggested that he was performing some type of activity. These fact contradict claimant's contention that he was "absolutely credible." Thus, the ALJ's assessment as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR. *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 4 day of October, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT:
DATE: 10-5-05
BY: aku
TO: TLM
CMHI